IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-27 |
| | ) | (JORDAN/GUYTON) |
| PATRICK JOSEPH RIGGER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the Court on the defendant's Motion to Suppress Evidence [Doc. 19]. This motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on October 1, 2008. Assistant United States Attorney Cynthia Davidson was present representing the government. Attorney Francis Lloyd was present representing the defendant, Patrick Joseph Rigger ("Rigger"). The defendant was also present. Accordingly, the Court took the suppression motion and related filings under advisement on October 1, 2008.

### I. POSITIONS OF THE PARTIES

The defendant was indicted [Doc. 1] on one count of being a felon in possession of a firearm and ammunition. The charge arises out of the search of the defendant's vehicle on September 16, 2007, during which search a rifle and ammunition were found in the car.

In his motion to suppress [Doc. 19], the defendant claims that his person and the vehicle he

1

was driving were illegally seized and searched by officers of the Knoxville Police Department ("KPD"). He states that the officers seized him without probable cause, that there was no justification for the search of the vehicle, and that all evidence obtained from the search of the vehicle must be suppressed. [Doc. 19].

The government filed a response [Doc. 22], asserting that defendant Rigger's motion should be denied, because officers, in the course of a casual encounter with the defendant, otherwise known as a "police citizen encounter," asked if they could search the vehicle. Defendant consented. During the hearing, the government further argued that there is no search issue, because the rifle was in plain view through the window of the vehicle, and that the vehicle, which was impounded after the defendant fled during the vehicle search, was searched at impound. Therefore, the inevitable discovery doctrine applies.

## II. SUMMARY OF TESTIMONY

At the evidentiary hearing on this motion, the government called KPD Officer Steve Still ("Still") as its witness.

Still testified that on September 16, 2007, he and KPD Officer Norman Rickman ("Rickman") were on patrol in the general area of the Western Heights housing project. Rickman was driving the police cruiser, with Still in the front seat. They were traveling westbound on Jourolman Street when Still saw a Ford Bronco parked in their lane of traffic, but facing East, that is, toward them. Still testified that the Ford Bronco was "somewhat off of the curb," specifically, "four or five feet off the curb." According to Still, the Ford Bronco was "obstructing traffic." A photo of the Ford Bronco as seen by Still was admitted as Exhibit 1.

Still testified that Rigger was getting out of the vehicle as the police car approached. Rickman parked in front of the Ford Bronco, facing it, but somewhat more to the middle of the street. Rickman activated the cruiser's blue lights. Still asked Rigger to "step over towards us."

When Rigger walked over to the officers, they asked him for his driver's license, and Rigger produced it. Then the officers asked Rigger for consent to look in the Ford Bronco. According to Still, Rigger "gave his consent."

Still testified that as he arrived at the door of the Ford Bronco and was about to enter it, Rigger "takes off running." Neither Rickman or Still pursued Rigger. Still, however, did proceed to search the vehicle. He found a .22 rifle and a pillow case containing 57 rounds of .22 ammunition.

The officers then "ran information" on Rigger, and prior to towing the Ford Bronco to impound, "Crime Scene" came to the scene and took photographs. The officers then swore out warrants on the defendant, charging him with unlawful possession of a weapon, roadway lane violation,[1] evading arrest, and no proof of insurance. The Affidavits of Complaint were marked as Exhibits 6 and 7 to the hearing. The Affidavit of Complaint, signed by Rickman, charges, in part, that Rigger ". . . . pulled to the left side of the roadway to park." See Exhibit 6.

---

[1] The roadway lane violation charge was based on Tenn. Code Ann. § 55-8-123. That section states, in pertinent part, as follows:

> Driving on roadways laned for traffic - Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply: (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

3

Still testified that Rigger's vehicle also was in violation of a section of the Knoxville City Code which requires cars to be no more than 12 inches from the curb. That Code ordinance is Sec. 17-296. The ordinance also requires that the vehicle be parked facing the proper direction of the traffic for the lane of traffic where it is parked. Still testified that Rigger's vehicle was in violation, because it was parked more than 12 inches from the curb, and it was parked facing eastbound in a westbound lane.

On cross-examination, Still testified that a violation of a city code provision is an offense for which he usually issues a citation, "depending on the charge . . . ." He added, "It's what's ever appropriate at the time."

Still identified Exhibits 2-5 as being additional photographs of the defendant's Ford Bronco, as it was parked during the events in question. Still confirmed that Jourolman Street is not lined for lanes, that is, it has no markings on it.

Still testified that he couldn't remember seeing any other traffic on Jourolman Street before the police cruiser pulled to a stop in front of the defendant's vehicle. Still testified that Rigger did not hesitate to produce his driver's license when requested to do so. The officers evidently did not ask Rigger for proof of insurance. However, they did look in the vehicle for an insurance card or some other evidence of auto insurance after Rigger fled. They could not find any proof of insurance.

On the matter of consent to search, Rickman asked Rigger for consent to look in his vehicle. According to Still, Rigger said "okay." Still then went to the driver's side window, looked inside, and saw a gun behind the front seat. During the search, Still found the pillow case "in the back floor board."

4

## III. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. Amend IV. The defendant contends that his rights under the Fourth Amendment were violated because the officers had no right to stop him and then to search his car. Specifically, he argues that the officers had neither probable cause nor reasonable suspicion to question him. The government argues that there was no stop involved in this case, but instead, that it was a constitutionally proper police-citizen encounter. Further, the government argues that the defendant gave consent to search the vehicle.

### A.   The Stop Issue

Terry v. Ohio, 392 U.S. 1, 30 (1968), permits a "stop and frisk" by police where the stop is based on specific, articulable facts indicating reasonable suspicion that a crime has been committed. Furthermore, "[t]he scope of activities permitted during an investigative stop is determined by the circumstances that initially justified the stop." United States v. Obasa, 15 F.3d 603, 607 (6th Cir. 1994) (citing United States v. Sharpe, 470 U.S. 675, 682, 105 S. Ct. 1568, 84 L.Ed.2d 605 (1985)).

The police have the authority to stop and temporarily detain citizens "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting Terry, 392 U.S. at 30). The reasonableness of a Terry stop and search is determined by examining "(1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's

5

personal security was reasonably related in scope to the situation at hand." United States v. Hardnett, 804 F.2d 353, 356 (6th Cir. 1986).

On the other hand, there is no Fourth Amendment implication where law enforcement officers approach someone in a public place and engage the person in conversation or ask the person to answer a few questions. Florida v. Bostick, 501 U.S. 429 (1991), see also United States v. Collis, 766 F.2d 219, 221 (6th Cir.), cert. denied, 474 U.S. 851 (1985) (no seizure occurred during consensual interview "absent coercive or intimidating behavior which negates the reasonable belief the compliance is not compelled"). In determining whether a seizure has occurred, the test is whether, in view of all the surrounding circumstances, a reasonable person would have believed he was not free to leave. Michigan v. Chesternut, 486 U.S. 567, 573 (1988). Therefore, an officer's request for information, without more, does not constitute a seizure under the Fourth Amendment. United States v. Peters, 194 F.3d 692, 698 (6th Cir. 1999), cert. denied, 528 U.S. 1174 (2000).

The Court finds that the testimony of Still was not impeached, and is credible. In fact, it appears that the parties do not dispute the facts which are central to the issue before the Court. The Court also finds that the circumstances surrounding the officers' initial encounter with the defendant–that he was asked to step over toward the officers and that the officers had turned on their blue lights–reveal that they had detained or stopped the defendant. See United States v. Buchanon, 72 F.3d 1217, 1224 (6th Cir. 1995) (holding that flashing police lights and officer's ordering defendant to move from the road into the grass contributed to the encounter being a stop rather than a consensual encounter).

The Court finds that the officers "were aware of specific and articulable facts which gave rise to a reasonable suspicion" that Rigger was engaged in criminal activity, specifically, in violation of

the City of Knoxville Ordinance §17-296. The ordinance states as follows:

> (a) Except when angle parking is permitted and designated as authorized in section 17-297, every vehicle stopped or parked upon a two-way roadway shall be so stopped or parked with the righthand wheels parallel to and within twelve (12) inches of the righand curb or as close as practicable to the right edge of the right hand shoulder.
>
> (b) Except when angle parking is permitted and designated as authorized in section 17-297, every vehicle stopped or parked upon a one-way roadway shall be so stopped or parked parallel to the curb or edge of the roadway, in the direction of authorized traffic movement, with its righthand wheels within twelve (12) inches of the righthand curb or as close as practicable to the right edge of the righthand shoulder, or with its lefthand wheels within twelve (12) inches of the lefthand curb or as close as practicable to the left edge of the lefthand shoulder.

In the present case, the defendant was parked in excess of 12 inches from the curb, and his vehicle was facing in the opposite direction of authorized traffic movement. In addition, the officers had a reasonable basis to stop the defendant and question him about the vehicle, given that it was parked in a location where public safety was implicated. Therefore, a <u>Terry</u> stop was justified by the facts observed by officers. Accordingly, the Court finds that the officers lawfully stopped Rigger.

### B.   The Consent To Search Issue

The defendant also argues that the warrantless search of his vehicle was unjustified. A search conducted pursuant to a valid consent is a well-recognized exception to the Fourth Amendment's general warrant requirement. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1975). In the present case, the validity of the alleged consent is not challenged, except insofar as the officers' initial contact with Rigger is challenged. Instead, the defendant attacks the credibility of Officer Still's testimony that the defendant gave consent by arguing that it was illogical for him to grant

consent with a weapon in the vehicle. The Court has already accredited the testimony of Still and finds that the defendant did give consent to search his vehicle. Moreover, the Court finds nothing in the record which would support a finding that Rigger's consent to search the vehicle was coerced rather than knowing and voluntary. United States v. Crowder, 62 F.3d 782, 787 (6th Cir. 1995), cert. denied, 516 U.S. 1057 (1996) (consent voluntary where defendant approached police car as it pulled up, gave consent prior to arrest, and no evidence of coercion). Accordingly, the Court finds that the officer could properly search the defendant's car pursuant to his consent.

## V. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing, and after reviewing the relevant legal authorities, it is clear that there is no basis to suppress any evidence seized from the defendant's vehicle on September 16, 2007. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence [Doc. 19] be **DENIED**.[2]

                                                                 Respectfully submitted,

                                                                   s/ H. Bruce Guyton
                                                        United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).